# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

SIDNEY NELSON                                                                                          PLAINTIFF

v.                                                                                              No. 4:10CV130-P-S

BEVERY SHELLY, ET AL.                                                                          DEFENDANTS

## REPORT AND RECOMMENDATION

On March 13, 2011, plaintiff Sidney Nelson, an inmate in the custody of the Mississippi State Penitentiary with inmate number R4858, appeared before the undersigned for a hearing as set forth in *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985), to determine whether there exists a justiciable basis for his claim filed under 42 U.S.C. § 1983. A plaintiff's claim will be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998) (citations omitted). The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed this lawsuit.[1]

In a rather convoluted factual scenario, the plaintiff claims that prison officials failed to protect him from the attack of other inmates and failed to provide adequate medical treatment for injuries sustained during such attacks. For the reasons set forth below, the undersigned recommends that these claims be dismissed.

### Allegations

On December 7, 2006, the plaintiff informed Captain Beverly Shelly of a threat involving gang members housed in his Unit 29 with him. Shelly determined that the threat was serious and

---

[1] 28 U.S.C. § 1915(g).

recommended that the plaintiff be transferred to Unit 32 (lockdown) for his safety. It appears that the plaintiff then moved to Unit 32.

In 2008, however, the plaintiff was reduced from B-custody to C-custody based upon allegations that he had possession of a cell phone and marijuana. The plaintiff was indicted on charges arising out of this incident, but a state court judge dismissed these charges. The plaintiff's custody was downgraded, nonetheless, and he was returned to Unit 29.

The plaintiff had trouble with the Vice Lord gang at Unit 29 of the Mississippi State Penitentiary. Vice Lord gang members attacked the plaintiff and hurt his ribs on December 15, 2009. The plaintiff did not know his attackers – and did not expect the attack. Medical personnel did not brace the ribs (as the plaintiff believes they should). An x-ray revealed no fractures. The ribs hurt the plaintiff for three months after the attack and, in the plaintiff's view, did not heal properly. As a result of the 2009 attack, the plaintiff was placed in administrative protective custody. Correctional Supervisor Beverly Shelly handled the first step of the grievance process; Warden Brewer handled the second step. Although the plaintiff had not previously requested to be kept separate from the inmates who attacked him through the Red Tag procedure, he did place red tags on three of his attackers *after* the attack. In addition, the plaintiff requested removal from Unit 29 altogether. His request for removal was denied, and, as directed by Deputy Warden James Brewer, the plaintiff was moved to Unit 29-J – another building in Unit 29.

The plaintiff was attacked again in 2010, this time by three members of the Gangster Disciples. The plaintiff believes the Gangster Disciples attacked him through an agreement with the Vice Lords. The attackers injured the plaintiff's eye in this second attack. Medical

personnel treated the plaintiff's eye with ibuprofen. Again, the plaintiff did not know his attackers or anticipate the attack, especially since the attackers were not part of the same gang which carried out the 2009 attack. The plaintiff informed Warden Brewer and Beverly Shelly that he had been attacked, and again requested a transfer to another unit at the Mississippi State Penitentiary. His request was again denied, and the plaintiff was transferred to the protective custody building, where he is currently confined to his cell for twenty-three hours per day. Although the plaintiff did not know his attackers, another inmate identified three of them, and the plaintiff placed red tags on these inmates, as well.

After an investigation, the plaintiff received a rule violation report for fighting. Correctional Supervisor Shirley Harris presided over the disciplinary hearing, where the plaintiff was found guilty of fighting, despite his claim that he was merely the victim of an attack. Although the plaintiff identified all of his many attackers, only three received any type of punishment. The plaintiff appealed this ruling through the grievance process, and Warden Verlena Flagg upheld the ruling, even though the plaintiff presented evidence that he was not the aggressor in the incident. Correctional Supervisor Shirley Harris also upheld the punishment, as did Warden James Brewer. The plaintiff later faced yet another gang attack while he was in protective custody, where the plaintiff remains.

## Failure to Protect

This case presents the court with a "failure to protect" claim. "The Eighth Amendment affords prisoners protection against injury at the hands of other inmates" *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). Deliberate indifference "[is] the proper standard to apply in the context of convicted prisoners who claim[] . . . failure to protect."

*Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). The plaintiff must allege that the defendants acted with reckless disregard to the possibility that he could be injured or killed by inmate gang members. In interpreting the applicable mental standard for "deliberate indifference" in conditions of confinement cases, which is also the applicable legal standard in the case at hand, *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995), the Supreme Court has held the standard is not met "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

In this case the plaintiff has not alleged that the defendants "consciously disregard[ed] a substantial risk of serious harm" to him. *Id.* at 826 (citation omitted). Three years passed between the initial 2006 encounter with the Vice Lords gang and the 2009 attack injuring the plaintiff's ribs. The plaintiff had been moved to another unit, then transferred back after being found guilty of a prison rule violation. The plaintiff did not know his attackers and did not anticipate that they would attack him. Given the length of time between the incidents – and the fact that the plaintiff himself could not have predicted the attack – the court cannot fathom how prison officials could have predicted it and thus prevented it. This reasoning applies even more to the 2010 attack during which the plaintiff sustained an injury to his eye. The plaintiff's attackers belonged to an entirely different gang, the Gangster Disciples, and the plaintiff likewise had no idea these gang members would attack him. As the plaintiff himself could not foresee the attack, the court cannot hold the defendants should have predicted the 2010 attack. For these reasons, the undersigned recommends that the plaintiff's claim that the defendants failed to

protect him be dismissed.

## Denial of Medical Treatment

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

The plaintiff's allegations in this case fall far short of this standard. As set forth in his allegations, he was examined and treated for each of his injuries. He received x-rays and medications for his injured ribs, and he received ibuprofen for his swollen eye. The plaintiff simply disagrees with the course of treatment he received, which does not constitute deliberate indifference in violation of the Eighth Amendment prohibition against cruel and unusual punishment. As such, the plaintiff's claim alleging denial of adequate medical treatment should be dismissed.

In sum, the undersigned respectfully recommends that all of the plaintiff's claims against the defendants should be dismissed for failure to state a claim upon which relief could be granted.

## Handling of Objections, Acknowledgment of Receipt

The appropriate procedures for filing objections to these findings and recommendations are found in 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). Objections must be in writing and must be filed within fourteen (14) days of this date, and "a party's failure to file written objections to the findings, conclusions, and recommendation in a magistrate judge's report and recommendation within [14] days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*)(citations omitted); *see also United States v. Carrillo-Morales*, 27 F.3d 1054, 1061-62 (5th Cir. 1994), *cert. denied*, 513 U.S. 1178, 115 S.Ct. 1163, 130 L. Ed. 1119 (1995).

The plaintiff must acknowledge receipt of this report and recommendation by signing the

enclosed acknowledgment form and returning it to the clerk of the court within fourteen (14) days of this date. *Failure to comply with the requirements of this paragraph may lead to dismissal of this lawsuit under Fed. R. Civ. P. 41(b) for failure to prosecute the claim and for failure to comply with an order of the court.*

Respectfully submitted this 29th day of June, 2011.

/s/ David A. Sanders
DAVID A. SANDERS
UNITED STATES MAGISTRATE JUDGE